UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------------------------------X
:
JOHN S. GREENEBAUM, individually and on : Civil Action No. 06 CA 10933MLW
behalf of all others similarly situated, :
: FIRST AMENDED
: CLASS ACTION
Plaintiff, : COMPLAINT FOR THE
: VIOLATION OF FEDERAL
v. : SECURITIES LAWS
:
AMERICAN TOWER CORPORATION, :
JAMES D. TAICLET, and BRADLEY SINGER, : JURY TRIAL
: DEMANDED
Defendants. :
:
---------------------------------------------------------------X

## FIRST AMENDED CLASS ACTION COMPLAINT

This is an Amended Complaint as a matter of course pursuant to Fed.R.Civ.P. Rule 15(a). None of the defendants have filed an Answer and/or responsive pleadings to the original Complaint and, therefore, plaintiff hereby files his First Amended Complaint as a matter of right.

Plaintiff, John S. Greenebaum, by his attorneys, on behalf of himself and all others similarly situated, alleges the following based upon the investigation of plaintiff's counsel, except as to the allegations specifically pertaining to plaintiff, which are based upon personal knowledge. The investigation of counsel included, among other things, a review of American Tower Corporation's ("American Tower" or the "Company") public filings with the United States Securities and Exchange Commission ("SEC"), press releases issued by the Company, media and news reports about the Company, and publicly available trading data relating to the price and volume of American Tower's securities.

## NATURE OF THE ACTION

1.      This is a federal class action brought on behalf of a class consisting of all persons who purchased, or sold put contracts of, the publicly traded securities of American Tower between February 1, 2006 and May 24, 2006, inclusive (the "Class Period").

2.      This action is a securities fraud case brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, by plaintiff on behalf of all those who purchased, or sold put contracts of, the publicly traded securities of American Tower during the Class Period to recover damages caused to the Class by defendants' violations of the securities laws.

## JURISDICTION AND VENUE

3.      The claims asserted herein arise under and pursuant to Sections 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

4.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

5.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, and 28 U.S.C. § 1391(b). American Tower maintains its principal place of business in this District and many of the acts and practices complained of herein occurred in substantial part in this District.

6.      In connection with the acts alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mail, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

7. Plaintiff John S. Greenebaum ("Greenebaum"), through his self-directed Investment Retirement Account, as detailed in the accompanying certification, incorporated by reference herein, sold American Tower put contracts obligating him to buy American Tower shares on or before May 20, 2006. On May 1, 2006, Greenebaum sold 100 put contracts for $6,499.80. On May 19 and 22, 2006, pursuant to his contractual obligation, Greenebaum purchased 2,700 and 7,300 shares, respectively, at a share price of $35, while the stock was trading at approximately $30 per share during these two days.

8. Defendant American Tower is a Delaware corporation with its principal place of business at 116 Huntington Avenue, Boston, Massachusetts 02116. The aggregate number of shares of American Tower common stock outstanding at the time of filing was approximately 419 million. At all relevant times, American Tower's stock was actively traded on the New York Stock Exchange (the "NYSE") composite under the symbol AMT.

9. Defendant James D. Taiclet ("Taiclet") was American Tower's President and Chief Executive Officer as well as Chairman of The Board during the Class Period. Defendant Taiclet, at all relevant times during the Class Period, was an American Tower Director who, as such, signed the Company's false and misleading Form 10-K Annual Report and Form 10-Q Quarterly Report issued during the Class Period. As hereinafter alleged, Mr. Taiclet was a control person of American Tower throughout the Class Period. On March 13, 2006, Defendant Taiclet exercised an option grant for 37,500 shares at $5.98. He then sold all 37,500 shares, on the same date, for a profit of over $900,000.

10. Defendant Bradley Singer ("Singer") was American Tower's Chief Financial Officer and Treasurer during the Class Period. Defendant Singer, at all relevant times during the Class Period, was American Tower's Chief Financial Officer and Treasurer who as such signed

3

the Company's false Form 10-K Annual Report and Form 10-Q Quarterly Report issued during the Class Period. As hereinafter alleged, Mr. Singer was a control person of American Tower throughout the Class Period. On March 10, 2006, Defendant Singer exercised an option grant for 30,000 shares at $3.04 per share. He then sold all 30,000 shares for a profit of over $800,000.

11. The defendants referenced above in ¶¶ 9-10 are referred to herein as the "Individual Defendants." Defendant American Tower and Individual Defendants are collectively referred to as "defendants."

12. Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about its business, operations, products, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

13. It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Both of the above officers of American Tower, by virtue of their high-level positions with the Company, directly participated in the management of the Company, and were directly involved in the day-to-day operations of the Company and its business, operations, products, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting,

producing, reviewing, and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

14. As officers and controlling persons of a publicly-held company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was traded on the NYSE, and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings, and present and future business prospects, and to correct any previously-issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

15. The Individual Defendants participated in the drafting, preparation, and/or approval of the various public, shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with American Tower, each of the Individual Defendants had access to the adverse undisclosed information about American Tower's business prospects and financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the

positive representations made by or about American Tower and its business issued or adopted by the Company materially false and misleading.

16.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period. Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and are therefore primarily liable for the representations contained therein.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

17.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased, sold put contracts of, or otherwise acquired the securities of American Tower during the Class Period and who were damaged thereby. Excluded from the Class are the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which defendants has or had a controlling interest.

18.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, American Tower common shares were actively traded on the NYSE. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of

the Class may be identified from records maintained by American Tower or its transfer agent and may be notified of the pendency of this action by mail, using the form notice similar to that customarily used in securities class actions.

19. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

20. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

21. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by defendants' acts as alleged herein;

(b) whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of American Tower; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

22. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually

redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background Facts

23.     American Tower is a wireless and broadcast communications infrastructure company. Its primary business is leasing antenna space on multi-tenant communications sites to wireless service providers and radio and television broadcast companies.

24.     During the Class Period, American Tower embarked on a fraudulent scheme whereby the Company backdated stock option grants to the Individual Defendants and/or other executives in order to provide the recipients with a more profitable option exercise price.

25.     Option granting and its related accounting practices have received scrutiny from the Securities Exchange Commission and United States District Attorneys. On March 18, 2006, the Wall Street Journal published "The Perfect Payday" which analyzed option granting practices at six companies. The article scrutinized these options and noted that the grant date for many of these options occurred when the stock price was trading at a low price relative to other times during the year. The article stated that the odds that the grant dates were not backdated were "astronomical."

26.     Since publication of the abovementioned Wall Street Journal article, the SEC has announced a number of inquiries and United States District Attorneys have issued subpoenas relating to option granting and accounting. The number of companies under government investigation or internal review for option granting practices has also increased to more than twenty.

27.     The allegations are similar among all companies in that option grant dates were backdated to allow company officials to profit from a more favorable option price than if the options were dated in an accurate manner irrespective of the stock trading price.

28.     In addition, numerous companies have either been forced to restate their historical financial results or have publicly stated that they may have to restate their results because expenses related to option granting will be greater than originally reported.

## Materially False And Misleading Statements Issued During the Class Period

29.     American Tower issued materially false and misleading statements during the Class Period in the following SEC filings:

(a)     On May 17, 2001, the Company's definitive proxy statement states that "[t]he exercise price per share of each option was equal to the fair market value per share of the underlying stock as valued by the Board of Directors on the date of grant."

(b)     On May 16, 2002, the Company's definitive proxy statement states that "[t]he exercise price per share of each option was equal to the fair market value per share of the underlying stock as valued by the Board of Directors on the date of grant."

(c)     On May 22, 2003, the Company's definitive proxy statement states that "[t]he exercise price per share of each option was equal to the closing price of our Class A Common Stock on the NYSE on the date of grant."

(d)     On May 6, 2004, the Company's definitive proxy statement states that "[t]he exercise price per share of each option was equal to the closing price of our Class A Common Stock on the NYSE on the date of grant."

(e)     On May 26, 2005, the Company's definitive proxy statement states that "[t]he exercise price per share of each option was equal to the closing price of our Class A Common Stock on the NYSE on the date of grant."

(f)     On May 11, 2006, the Company's definitive proxy statement states that "[t]he exercise price per share of each option was equal to the closing price of our Class A Common Stock on the NYSE on the date of grant."

(g)     Furthermore, on March 15, 2006 the Company reported on its annual report on Form 10-K filed with the SEC a loss of $0.44 per share with expenses of $801 million. By signing the Form 10-K, Individual Defendants certified that the annual report contained no misstatements or omissions of material fact. Individual Defendants further certified that they had disclosed any fraud involving management or other employees who had a significant role in the Company's internal control over financial reporting.

(h)     On May 9, 2006 the Company reported on its quarterly report on Form 10-Q filed with the SEC a loss of $0.01 per share with expenses of $251 million. By signing the Form 10-Q, Individual Defendants certified that the quarterly report contained no misstatements or omissions of material fact. Individual Defendants further certified that they had disclosed any fraud involving management or other employees who had a significant role in the Company's internal control over financial reporting.

30.     The statements referenced above in ¶ 29, were each materially false and misleading when made as they misrepresented and/or omitted the following adverse facts which then existed and disclosure of which was necessary to make the statements made not false and/or misleading, including:

      a) Contrary to statements made by the Company, the option grants were not made at the fair market value or the closing price on the NYSE on the date of the grant;

      b) American Tower improperly understated its expenses and overstated its earnings as a result of improper option dating; and

      c) American Tower's financial statements were not prepared in accordance with GAAP.

## The Truth Begins To Emerge

31. Initially, even as the wrongful practice of backdating of options grants became public for a number of companies (see ¶¶ 25-28), American Tower made no disclosures to the effect that it too had committed these wrongful practices.

32. Subsequently, on May 19, 2006, the Company issued an 8-K that stated that it has created a special committee comprised of independent directors to conduct an internal review of the Company's historical stock option practices and accounting. The Company stated that it initiated this review following the release of a research report by The Center for Financial Research and Analysis that analyzed stock option granting practices as related to their timing and pricing.

33. On May 19, 2006, the Company also announced that depending on the outcome of its internal review of its historical option dating practices it may need to restate its historical financial statements.

34. On the same date, the Company announced that it received a letter of informal inquiry from the Securities and Exchange Commission after formation of the special committee requesting documents related to the Company's option grants and practices.

35.     On May 23, 2006, the Company announced that it had received a subpoena from the United States District Attorney for the Eastern District of New York that requested documents relating to its historical stock option granting practices. The Company also announced that it was temporarily suspending its stock repurchase program in light of the recent probes.

### **Allegations of Scienter**

36.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false, incomplete or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

37.     As set forth herein, defendants by virtue of their receipt of information reflecting the true facts regarding American Tower, their control over, and/or receipt and/or modification of American Tower's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning American Tower, participated in the fraudulent scheme alleged herein. Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the public.

38.     Defendants had the motive and opportunity to perpetrate the fraudulent scheme described herein because the Individual Defendants were the most senior officers of American Tower, issued statements and press releases on behalf of American Tower and had the opportunity to commit the fraud alleged herein. Furthermore, defendants would not have been

able to carry out their scheme to defraud investors by knowingly backdating option grant dates without making the false or misleading statements and omissions that are alleged above.

39.     In addition, the Individual Defendants sold American Tower shares at artificially inflated prices as follows:

a) On March 13, 2006, Taiclet exercised an option grant for 37,500 shares at $5.98. He then sold all 37,500 shares, on the same date, for a profit of over $900,000. Furthermore, in its May 16, 2002 definitive proxy statement, the Company stated that Taiclet was granted stock options on November 7, 2001 at an exercise price of $5.98 per share, which was the low price of the stock for the year 2001. The dating of this grant evidences option backdating.

b) On March 10, 2006, Singer exercised an option grant for 30,000 shares at $3.04 per share. He then sold all 30,000 shares for a profit of over $800,000.

40.     Furthermore, the timing and volume of these insider transactions were suspicious in that they occurred only days before the truth of the option grant backdating emerged (see ¶¶ 25-28).

41.     Due to Taiclet's and Singer's positions within the Company, Chief Executive Officer and Chief Financial Officer, respectively, they had specific knowledge of the Company's option granting practices.

### Loss Causation

42.     During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated American Tower's stock price and operated as a fraud or deceit on Class Period purchasers and put sellers of American Tower's publicly traded securities by misrepresenting the Company's operating condition.

43.     The Company's ultimate destiny is dependent on the integrity of management. In this particular case, the backdating of stock option grants to increase the profitability of the options is a classic example of loss of confidence on the part of investors since management is effectively taking from the shareholders in order to line their own pockets. This loss of confidence resulted in the precipitous decline in the price of American Tower's stock.

44.     Once truth of defendants' scheme "leaked" into the market, American Tower's stock price fell as the prior artificial inflation came out of American Tower's stock price.

45.     On May 11, 2006, American Tower closed at a price of $34.76. As the truth began to emerge, the stock price fell over the next several days to $30.30 on May 24, 2006.

46.     The decline in American Tower's stock price at the end of the Class Period was a direct result of the defendants' fraudulent conduct alleged herein finally being revealed to American's Tower's investors and the market.

47.     The resulting decline in American Tower's stock price was foreseeable at the time of the defendants' misrepresentations. Despite being aware of the consequences of their fraudulent conduct, defendants nevertheless knowingly backdated options, which, in turn, caused the stock price to decline.

48.     The totality of the circumstances around American Tower's stock price drop combine to negate any inference that the economic loss suffered by plaintiff and other Class members was caused by changed market conditions, macroeconomic or industry factors, or American Tower-specific facts unrelated to defendants' fraudulent conduct.

49.     The economic loss sustained by plaintiff and the other members of the Class was the direct and proximate result of defendants' fraudulent scheme and course of business to artificially inflate American Tower's stock price and the ensuing substantial decline in the value

of American Tower's stock when defendants' materially false and misleading statements, omissions of material fact and devices, schemes, or artifices to defraud were revealed. American Tower's investors and the market did not learn the truth until American Tower's fraudulent scheme became known.

## FRAUD-ON-THE-MARKET DOCTRINE

50.     At all relevant times, the market for American Tower's publicly traded securities was an efficient market for the following reasons, among others:

(a) The Company's Common Stock met the requirements for public listing and was listed and actively traded on the NYSE, a highly efficient market;

(b) As a regulated issuer, the Company filed periodic public reports with the SEC; and

(c) The Company regularly issued press releases which were carried by national news wires. Each of these releases was publicly available and entered the public marketplace.

51.     As a result, the market for the Company's publicly traded securities promptly digested current information with respect to American Tower from all publicly available sources and reflected such information in the price of the Company's securities. Under these circumstances, all purchasers and put sellers of the Company's publicly traded securities during the Class Period suffered similar injury through their purchase, and/or sale of put contracts, of the publicly traded securities of American Tower at artificially traded prices and a presumption of reliance applies.

## NO SAFE HARBOR

52.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of American Tower who knew that those statements were false when made.

## FIRST CLAIM FOR RELIEF
### For Violation of Section 10(b) of the 1934 Act and Rule 10b-5 Against All Defendants

53.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54.     During the Class Period, defendants disseminated false statements, which it knew or recklessly disregarded were materially false and misleading in that they contained material misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

55.     Defendants violated Section 10(b) of the 1934 Act and Rule 10b-5 in that they: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c)

engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers and put sellers of the Company's publicly traded securities during the Class Period.

56.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices of American Tower's publicly traded securities.

57.     Plaintiff and the Class would not have purchased or sold puts of American Tower's publicly traded securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

58.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities, including the purchases and sales of put contracts, during the Class Period.

## SECOND CLAIM FOR RELIEF
### For Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

59.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

60.     The Individual Defendants acted as controlling persons of American Tower within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, directly or indirectly, the decision-

making of the Company, including the content and dissemination of the various statements which plaintiff contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

61.     In particular, each of these defendants, had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

62.     As set forth above, American Tower and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

63.     As a direct and proximate result of defendants' wrongful conduct, plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities, including the sales of put contracts, during the Class Period.

## JURY DEMAND

64.     Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment as follows:

A.     Awarding plaintiff and other members of the Class damages and statutory compensation against all defendants, jointly and severally;

B.   Awarding plaintiff and other members of the Class the costs and expenses of this litigation, including reasonable attorneys' fees, and experts' fees and other costs and disbursements; and

C.   Granting plaintiff and other members of the Class such other and further relief as to this Court may seem just and proper.

Dated: Boston, Massachusetts
May 30, 2006

ADKINS, KELSTON & ZAVEZ, P.C.

By:   /s/ John Peter Zavez
   Jason B. Adkins (BBO# 558560)
   John Peter Zavez (BBO# 555721)

90 Canal Street, Suite 500
Boston, Massachusetts 02114
Tel: (617) 367-1040
Fax: (617) 742-8280

*Plaintiff's Local Counsel*

LOVELL STEWART HALEBIAN LLP
Christopher Lovell
Craig Essenmacher
Imtiaz A. Siddiqui
500 Fifth Avenue, 58th Floor
New York, NY 10110
Tel: (212) 608-1900
Fax: (212) 719-4677

BISHOP & ASSOCIATES, P.S.C.
Robert W. Bishop
Jennifer L. McCarty
6520 Glenridge Park Place
Suite 6
Louisville, Kentucky 40222
Tel: (502) 425-2600
Fax: (502) 425-9115

*Attorneys for Plaintiff*