UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE AMERICAN TOWER CORPORATION SECURITIES LITIGATION | No. 06-CV-10933 (MLW) |

## STIPULATION AND AGREEMENT OF SETTLEMENT

Subject to the approval of the Court and pursuant to Rule 23 of the Federal Rules of Civil Procedure, this Stipulation and Agreement of Settlement (the "Settlement Agreement") is entered into among Lead Plaintiff Steamship Trade Association-International Longshoremen's Association Pension Fund ("Lead Plaintiff" or "STA-ILA"), on behalf of itself and the Class defined herein for purposes of settlement (collectively, "Plaintiffs"), and Defendants American Tower Corporation ("AMT" or the "Company"), Steven B. Dodge, James D. Taiclet, Jr., Bradley E. Singer, Jean A. Bua, Timothy F. Allen, Justin D. Benincasa, Pamela D.A. Reeve, Carolyn F. Katz, and Mary Agnes Wilderotter (collectively, "Defendants") by and through their respective, duly authorized counsel.

This Settlement Agreement is intended by both Lead Plaintiff and Defendants to fully and finally compromise, resolve, discharge and settle the Settled Claims, as defined herein, and dismiss this Action with prejudice, subject to the terms and conditions set forth below and without any admission or concession as to the merits of any claim or defense by Lead Plaintiff or Defendants.

**WHEREAS:**

A.     This Action was commenced on May 26, 2006 by the filing of a class action complaint in this Court alleging violations of the federal securities laws.

B.     On July 31, 2006, pursuant to provisions of the Private Securities Litigation Reform Act of 1995, STA-ILA filed a motion for appointment as lead plaintiff and for approval of the predecessor-

in-interest of Labaton Sucharow LLP as lead counsel.  STA-ILA filed a notice of non-opposition to the

motion on August 18, 2006.  The Court granted the motion on December 27, 2006.

C.      On February 7, 2007, the Court held a status conference and, by Order dated February

15, 2007, set a deadline for the filing of an amended complaint and a briefing schedule and oral

argument on Defendants' expected motion to dismiss.

D.      Pursuant to this Order, Lead Plaintiff filed its Consolidated Amended Class Action

Complaint for Violations of the Federal Securities Laws (the "Complaint") on March 26, 2007.  The

Complaint generally alleges that Defendants engaged in undisclosed "backdating" of stock option grants

and publicly made materially false and misleading statements between April 1, 2002 and May 22, 2006,

inclusive (the "Class Period") regarding AMT's financial condition, accounting for stock-based

compensation, and policies for the granting of stock options, in violation of Sections 10(b) and 20(a) of

the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-

5 promulgated thereunder by the Securities and Exchange Commission (the "SEC"), 17 C.F.R. §

240.10b-5.  The Complaint further alleges that Defendants' materially false and misleading statements

caused AMT common stock to trade at artificially inflated prices during the Class Period and that

persons who purchased AMT common stock at artificially inflated prices were damaged.

E.      Defendants moved to dismiss the Complaint on May 14, 2007, arguing in two

memoranda of law that the Complaint's allegations of scienter, materiality, loss causation, damages, and

controlling person liability were deficient.  Lead Plaintiff filed submissions in opposition to the motion

to dismiss on July 2, 2007, and Defendants filed reply memoranda of law in further support of their

motion on July 30, 2007.  Thereafter, the Parties filed various notices of supplemental authority and

responses thereto.

F.      On September 4, 2007, the Court issued an order rescheduling the hearing on

Defendants' motion to dismiss from September 18, 2007 to November 14, 2007.  On October 23, 2007,

in view of the Parties' intent to participate in mediation, the Court rescheduled the hearing to December 11, 2007.

G.      On October 23, 2007, Lead Plaintiff filed, in opposition to the pending motion to dismiss, a request for judicial notice of the Report of the Special Litigation Committee of the Board of Directors of American Tower Corporation (the "SLC Report"), which had been prepared in response to certain shareholder derivative actions and filed publicly, with certain redactions, with the Superior Court of Massachusetts.  Defendants filed objections to the request on November 6, 2007.

H.      During September 2007, the Parties agreed to attempt to mediate a settlement of this Action before the Hon. Eugene G. Lynch, a former United States District Judge and an experienced mediator in securities class action litigation.  The Parties submitted comprehensive mediation statements and exchanged reports from their respective damages experts.  The mediation was held on October 25, 2007.  Despite a full day of good-faith, arm's-length efforts, the Parties did not reach an agreement.

I.      On November 13, 2007, Lead Plaintiff filed a motion for leave to file a proposed Second Amended Consolidated Class Action Complaint (the "Second Amended Complaint") which, among other amendments, would allege facts set forth in the SLC Report and amend Lead Plaintiff's loss causation allegations.

J.      On November 16, 2007, the Court issued an Order setting a briefing schedule on the motion for leave to amend the Complaint and stating that a scheduling conference, rather than a hearing on Defendants' pending motion to dismiss, would be held on December 11, 2007.

K.      Pursuant to the Court's Order, Defendants filed their brief in opposition to the motion to amend on November 28, 2007, and Lead Plaintiff filed a reply brief in further support of the motion on December 4, 2007.

L.      While the motion to amend was being briefed, the Parties agreed to resume settlement discussions.  On December 10, 2007, the Parties reached an agreement-in-principle to settle this Action

for the consideration set forth herein, subject to negotiation of a definitive Settlement Agreement and exhibits and Court approval.

M.      The Parties informed the Court of the agreement-in-principle on December 11, 2007, during the previously scheduled status conference.  The same day, the Court issued an Order directing the Parties to file a motion for preliminary approval of the Settlement, a supporting memorandum, and a proposed notice to the class no later than February 8, 2008, and setting a hearing on the motion for preliminary approval for February 19, 2008.

N.      Based upon their investigation and evaluation of the facts and law relating to the claims alleged in the Complaint, as well as confirmatory discovery, Lead Plaintiff and Plaintiffs' Lead Counsel (who have extensive experience in securities class action litigation) have agreed to settle this Action pursuant to the terms and conditions of this Settlement Agreement after considering, among other things, (i) the substantial cash benefits to Class Members of the Settlement; (ii) the uncertainty of being able to prove the allegations in the Complaint, and the required elements of scienter and loss causation in particular; (iii) the risk that the Court may grant, in whole or in part, Defendants' pending motion to dismiss the Complaint or a future motion to dismiss Plaintiffs' proposed Second Amended Complaint; (iv) the uncertainty, even if Plaintiffs were to establish liability at trial, inherent to the parties' various and competing theories of loss causation and damages; (v) the uncertainty in proving damages given the increases and general upward trend in AMT's stock price during and after the Class Period; (vi) Defendants' likely positions, expressed during the pendency of the litigation and also in connection with settlement negotiations, concerning the various liability and damages issues; (vii) the attendant risks of litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation (including any appeals); (viii) the desirability of consummating this Settlement Agreement in order to provide certain and effective relief to Class Members at this juncture of the Action and without

further delay; and (ix) their belief that the Settlement is fair, reasonable, and adequate and in the best interests of all Class Members.

O.    Defendants deny any wrongdoing, fault, liability, violation of law or damage alleged in the Complaint and do not admit or concede any wrongdoing, fault, liability, violation of law or damage in connection with any facts or claims that have been or could have been alleged against them by Lead Plaintiff, but consider it desirable for the Action to be settled because the proposed Settlement will (i) bring to an end the substantial expenses, burdens, risks, and uncertainties associated with continued litigation of this Action; (ii) finally put to rest those claims and the underlying matters; and (iii) avoid further expense and disruption of the management and operation of Defendants' business due to the prosecution and defense of this Action.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED,** among Lead Plaintiff, on behalf of itself and each of the other Class Members, by and through their duly authorized counsel, and Defendants, by and through their duly authorized counsel, that subject to the approval of the Court, this Action hereby will be settled, compromised, and dismissed on the merits and with prejudice on the terms and conditions set forth in this Stipulation and Agreement of Settlement dated as of February 8, 2008.

## I.    CERTAIN DEFINITIONS

1.    As used in this Settlement Agreement and the exhibits annexed hereto, the following terms have the following meanings unless a section or subsection of this Settlement Agreement or an exhibit otherwise provides:

a)    "Action" means the above-captioned consolidated action titled *In re American Tower Corporation Securities Litigation,* No. 06 CV 10933 (MLW) (D. Mass.).

b)    "AMT" or the "Company" means Defendant American Tower Corporation.

c)      "Authorized Claimant" means a Class Member (or the representative of such Class Member including, without limitation, agents, administrators, executors, heirs, successors, and assigns), who timely returns a valid and signed Proof of Claim to the Claims Administrator and who is entitled to a distribution from the Settlement Fund pursuant to the terms and conditions set forth in this Settlement Agreement and the Plan of Allocation.

d)      "Claims Administrator" means, subject to Court approval, Strategic Claims Services, LLC or such other or subsequent entity that the Court shall appoint to administer the Settlement and to perform other administrative functions under this Settlement Agreement.

e)      "Class" or "Class Members" means, for purposes of this Settlement only, all persons who purchased or otherwise acquired shares of AMT common stock between April 1, 2002 and May 22, 2006, inclusive, and were damaged thereby.  Excluded from the Class are the Defendants; the officers and directors of the Company at all relevant times; members of their immediate families; Company management personnel at the vice president level or above who surrendered stock options or whose stock options were amended pursuant to the Company's Remediation Plan; and their legal representatives, heirs, successors or assigns and any entity in which any such excluded person has or had a controlling interest.  Also excluded from the Class are those persons who submit valid and timely requests for exclusion from the Class in accordance with the requirements set forth in the Notice.

f)      "Class Period" means, for purposes of this Settlement only, the period of time between April 1, 2002 and May 22, 2006, inclusive.

g)      "Complaint" means the Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws, filed in this Action on March 26, 2007.

h)      "Court" means the United States District Court for the District of Massachusetts.

i) "Defendants" means American Tower Corporation, Steven B. Dodge, James D. Taiclet, Jr., Bradley E. Singer, Jean A. Bua, Timothy F. Allen, Justin D. Benincasa, Pamela D.A. Reeve, Carolyn F. Katz, and Mary Agnes Wilderotter.

j) "Defendants' Lead Counsel" means the law firms of King & Spalding LLP and Edwards Angell Palmer & Dodge LLP.

k) "Escrow Account" means the interest-bearing escrow account in which the Settlement Fund will be deposited.

l) "Execution Date" means the date on which this Settlement Agreement has been executed by all Parties.

m) "Fairness Hearing" means the hearing at or after which the Court will make a final decision: (i) whether to approve this Settlement Agreement as fair, reasonable, and adequate pursuant to Rule 23 of the Federal Rules of Civil Procedure; (ii) whether the proposed Plan of Allocation should be approved; and (iii) whether the application of Plaintiffs' Lead Counsel for a Fee and Expense Award should be granted.

n) "Fee and Expense Award" means such amounts as may be awarded by the Court to Plaintiffs' Lead Counsel to compensate Plaintiffs' Counsel for their fees and expenses in connection with the Action, which may include some or all of the following: (i) an award of attorneys' fees; (ii) reimbursement of expenses incurred in connection with prosecuting the Action, including, without limitation, expenses attributable to experts and/or consultants retained by Plaintiffs' Counsel; and (iii) interest on such attorneys' fees and expenses at the same rate and for the same periods as earned by the Settlement Fund (until paid).

o) "Final Judgment" means the Final Judgment and Order of Dismissal with Prejudice to be entered by the Court approving the Settlement, substantially in the form annexed hereto as Exhibit B.

p)      "Final Settlement Date" means the date on which the Final Judgment, in substantially the form set forth in Exhibit B annexed hereto, becomes final.  For purposes of this definition, the Final Judgment shall become final: (i) if no appeal is taken therefrom by any Person as to the Final Judgment, on or before the date on which the time to appeal from the Final Judgment has expired pursuant to Rule 4(a) of the Federal Rules of Appellate Procedure, inclusive of any extension granted thereunder, or (ii) if any appeal is taken by any Person from the Final Judgment, on the date on which all appeals therefrom, including any petitions for rehearing or reargument, petitions for rehearing en banc, and petitions for certiorari or any other form or review, have been finally dismissed, have expired or have been disposed of in a manner resulting in a final affirmance of the Final Judgment.

q)      "Lead Plaintiff" means Steamship Trade Association-International Longshoremen's Association Pension Fund.

r)      "Net Settlement Fund" means the Settlement Fund, including any interest or other income earned thereon, less (i) any Fee and Expense Award; (ii) any Notice and Administration Expenses; and (iii) any Taxes and Tax Expenses payable from the Settlement Fund.

s)      "Notice" means the notice of the proposed Settlement and Fairness Hearing, which is to be mailed to Class Members, pursuant to the Preliminary Approval Order, substantially in the form annexed hereto as Exhibit 1 to Exhibit A.

t)      "Notice and Administration Expenses" means all costs associated with providing notices to the Class and the administration of the Settlement, including, without limitation, the costs associated with preparing, printing and mailing the Notice and Proof of Claim to Class Members; publishing the Summary Notice; processing Proofs of Claim; and distributing the Net

Settlement Fund; *provided, however,* that Notice and Administration Expenses shall not include any of the Fee and Expense Award.

u)    "Parties" means Lead Plaintiff and Defendants.

v)    "Plaintiffs' Counsel" means the law firms of Labaton Sucharow LLP; Law Offices of Peter G. Angelos, and Thornton & Naumes LLP; and any of their respective predecessors-in-interest.

w)    "Plaintiffs' Lead Counsel" means the law firm of Labaton Sucharow LLP.

x)    "Plan of Allocation" means the terms and procedures for allocating the Net Settlement Fund among, and distributing the Net Settlement Fund to, Authorized Claimants as proposed by Plaintiffs' Lead Counsel and set forth in the Notice, or such other Plan of Allocation as the Court shall approve.

y)    "Preliminary Approval Order" means the Order to be entered by the Court preliminarily approving the Settlement and providing for notice, as contemplated in Section 13 of this Settlement Agreement.   A copy of the Preliminary Approval Order proposed by the Parties is annexed hereto as Exhibit A.

z)    "Proof of Claim" means the form that will be mailed to Class Members with the Notice and pursuant to which Class Members will submit a claim by completing, signing, dating, and returning it to the Claims Administrator in accordance with the procedures set forth therein. A sample Proof of Claim proposed by Plaintiffs is annexed hereto as Exhibit 2 to Exhibit A.

aa)    "PSLRA" means the Private Securities Litigation Reform Act of 1995.

bb)    "Qualified Settlement Fund" means a fund within the meaning of Treasury Regulations § 1.468B-1.

cc)    "Released Parties" means any and all of the Defendants, and their past or present subsidiaries, parents, successors and predecessors, officers, directors, agents, employees,

insurers, attorneys, advisors, investment advisors, auditors, accountants, and any person, firm, trust, corporation, officer, director, or other individual or entity in which any Defendant has a controlling interest or which is related to or affiliated with any of the Defendants, and the legal representatives, heirs, successors-in-interest or assigns of Defendants.

dd)     "Settled Claims" means any and all claims (including "Unknown Claims" as defined below), debts, demands, rights or causes of action, or liabilities whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether based on federal, state, local, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, held by Lead Plaintiff or Class Members individually, collectively, or in any other capacity, which have been or could have been asserted in any forum by Lead Plaintiff or Class Members individually, collectively, or in any other capacity against any of the Released Parties which arise out of, are based upon, or are in any way related to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint, including but not limited to the purchase or acquisition of AMT common stock during the Class Period; *provided, however,* that the term "Settled Claims" shall not include claims to enforce the Settlement, shall not include any rights or claims of Defendants against their insurers, or their insurers' subsidiaries, predecessors, successors, assigns, affiliates, or representatives, and shall not include any claims belonging to the Company or any purported shareholder derivative claims or causes of action purportedly brought on behalf of the Company, including those brought in the consolidated shareholder derivative action filed in this Court, *In re American Tower Corporation Derivative Litigation,* No. 06-CV-11029 (MLW) (D. Mass.), and those brought in the

consolidated shareholder derivative action filed in the Superior Court of Massachusetts, *In re American Tower Corporation Derivative Litigation*, No. 06-2164 (BLS1).

ee)      "Settled Defendants' Claims" means any and all claims, rights or causes of action or liabilities whatsoever, whether based on federal, state, local, statutory or common law or any other law, rule or regulation, including both known claims and unknown claims, that have been or could have been asserted in the Action or any forum by the Defendants or any of them against Plaintiffs or Plaintiffs' Counsel, which arise out of or relate in any way to the institution, prosecution, or Settlement of the Action; *provided, however,* that "Settled Defendants' Claims" shall not include claims to enforce the Settlement, shall not include any rights or claims of Defendants against their insurers, or their insurers' subsidiaries, predecessors, successors, assigns, affiliates, or representatives, and shall not include any rights or claims of Defendants which arise out of or relate in any way to the shareholder derivative claims or causes of action purportedly brought on behalf of AMT, in the consolidated shareholder derivative action filed in this Court, *In re American Tower Corporation Derivative Litigation*, No. 06-CV-11029 (MLW) (D. Mass.), and those brought in the consolidated shareholder derivative action filed in the Superior Court of Massachusetts, *In re American Tower Corporation Derivative Litigation*, No. 06-2164 (BLS1).

ff)      "Settlement" means the agreement between and among the Parties to settle, compromise and dismiss this Action with prejudice and on the merits, under the terms, conditions, and provisions set forth in this Settlement Agreement.

gg)      "Settlement Agreement" means this Stipulation and Agreement of Settlement and its accompanying exhibits, including any subsequent amendments thereto and any exhibits to such amendments.

hh)      "Settlement Fund" means the fund described in Sections 2-4 of this Settlement Agreement.

11

ii)      "Summary Notice" means the notice of the proposed Settlement and Fairness Hearing, which is to be published, pursuant to the Preliminary Approval Order, substantially in the form annexed hereto as Exhibit 3 to Exhibit A.

jj)      "Taxes and Tax Expenses" means (i) all taxes (including any estimated taxes, interest or penalties) on the income of the Settlement Fund and (ii) expenses and costs incurred in connection with the operation and implementation of Sections 10-12 of this Settlement Agreement and the taxation of the Settlement Fund, including, without limitation, expenses of tax attorneys and/or accountants related to filing the returns described in Sections 10-12.

kk)      "Unknown Claims" means any Settled Claim which any Class Member does not know or suspect to exist in such party's favor as of the Final Settlement Date which, if known by such party, might have affected such party's settlement with and release of the Released Parties, or might have affected such party's decision not to object to this settlement.  With respect to any and all Settled Claims, upon the Final Settlement Date, the Class Members shall expressly, and by operation of the Final Judgment shall have expressly waived, the provisions, rights and benefits of California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

By operation of the Final Judgment, the Class Members also shall have expressly waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to California Civil Code § 1542.  The Class Members or certain of them may hereafter discover facts in addition to or different from those which such party now knows or believes to be true with respect to the subject matter of the Settled Claims, but the Class Members, upon the Final Settlement Date, by operation of the Final Judgment shall have, fully, finally, and forever settled

and released, any and all Settled Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

## II.     THE SETTLEMENT FUND

2.     The Settlement Fund shall consist of fourteen million dollars ($14,000,000.00) in cash (the "Settlement Amount"), together with all interest or other income earned on the Settlement Amount or any portion thereof commencing on the day after funding of the Settlement Amount.

3.     Defendants shall pay or cause to be paid, by wire transfer or similar means, two hundred fifty thousand dollars ($250,000.00) of the Settlement Amount into the Escrow Account within ten (10) business days after the Court's entry of the Preliminary Approval Order.  This payment shall be used solely to pay for Notice and Administration Expenses.  All interest accruing on this payment from the time of deposit shall become part of the Settlement Fund to be used for the benefit of the Class.

4.     Within forty-five (45) days after the Court's entry of the Preliminary Approval Order, Defendants shall further pay or cause to be paid, by wire transfer or similar means, the thirteen million seven hundred fifty thousand dollar ($13,750,000.00) balance of the Settlement Amount into the Escrow Account.

## III.     ADMINISTRATION OF
##          THE SETTLEMENT FUND

### A.     The Escrow Agent

5.     Plaintiffs' Lead Counsel shall serve as escrow agent of the Escrow Account (the "Escrow Agent").  The Escrow Agent shall invest the Settlement Fund in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency

thereof and shall reinvest the proceeds of these instruments as they mature in similar instruments at the then-current market rates.  Neither Defendants nor Defendants' Counsel shall have any responsibility or liability for investment decisions.

6.      The Escrow Agent shall not use or disburse all or any part of the Settlement Fund except as provided for in the Settlement Agreement, or by an order of the Court, or with the written agreement of Defendants' Lead Counsel and Plaintiffs' Lead Counsel.

7.      The Escrow Agent is authorized to execute such transactions on behalf of Lead Plaintiff and the Class Members as are consistent with the terms of the Settlement Agreement.

8.      All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to the Settlement Agreement, the Plan of Allocation, and/or further order(s) of the Court, or returned to the parties that funded the Settlement Amount, with interest to follow principal, in the event that this Settlement is not consummated or is terminated pursuant to Section 29 below.

9.      Following the funding of the Escrow Account, Plaintiffs' Lead Counsel, without further approval from Defendants or the Court, may cause the Escrow Account to disburse funds to the Claims Administrator to pay reasonable and necessary Notice and Administration Expenses, Taxes and Tax Expenses, and other reasonable and necessary costs or expenses incurred in carrying out the terms and conditions of this Settlement Agreement or arising from the administration, management or distribution of the Escrow Account or Settlement Fund.  Defendants shall have no liability or responsibility for any such costs.

**B.      Taxes and Tax Expenses**

10.      The Parties and the Escrow Agent agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1.  In addition, Plaintiffs'

Lead Counsel shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this Part III.B, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such election shall be made in compliance with the procedures and requirements contained in such regulations.

11.     For the purposes of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. § 1.468B promulgated thereunder, the "administrator" shall be Labaton Sucharow LLP or its successor or, at its election, the Claims Administrator, which shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treas. Reg. § 1.468B-2(k)). Such returns (as well as the election described in Section 10) shall be consistent with this Part III.B and in all events shall reflect that all taxes (including any estimated taxes, interest, or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in Section 12 hereof.

12.     All (i) taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund ("Taxes") and (ii) expenses and costs incurred in connection with the operation and implementation of this Part III.B (including, without limitation, expenses of tax attorneys and/or accountants, mailing and distribution costs, and expenses relating to filing the returns described in this Part III.B) ("Tax Expenses"), shall be paid out of the Settlement Fund; in all events, the Released Parties shall have no liability or responsibility for the Taxes, the Tax Expenses, or the filing of any tax returns or other documents with the Internal Revenue Service or any other state or local taxing authority. Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Settlement and shall be timely paid by the Escrow Agent out of the Settlement Fund without prior order from the Court, and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts (as well as any amounts that may be required to be withheld under Treas.

Reg. § 1.468B-2(1)(2)); the Released Parties are not responsible and shall have no liability therefor, or for any reporting requirements that may relate thereto.  The Parties hereto agree to cooperate with the Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Part III.B.

## IV.   PRELIMINARY APPROVAL HEARING AND ORDER

13.   Promptly after execution of this Settlement Agreement, the Parties shall submit the Settlement Agreement together with its Exhibits to the Court and shall apply for entry of an order ("Preliminary Approval Order"), substantially in the form annexed hereto as Exhibit A.

## V.   ADMINISTRATION AND CALCULATION OF CLAIMS, FINAL AWARDS, AND SUPERVISION AND DISTRIBUTION OF THE SETTLEMENT FUND

14.   The Claims Administrator, acting on behalf of the Class, and subject to such supervision and direction of the Court or Plaintiffs' Lead Counsel as may be necessary or as the circumstances may require, shall administer and calculate the claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants.  Defendants and Defendants' Counsel shall have no role in or responsibility for the administration of the Settlement or for the solicitation, review or evaluation of Proofs of Claim nor any liability therefor, and shall have no liability to any Person, including, without limitation, the Class or Plaintiffs' Lead Counsel, nor shall any discovery be taken of Defendants in connection with such matters.  However, Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms, including providing Plaintiffs' Lead Counsel, without charge, reasonable information from the Company's transfer records in the Company's possession or control concerning the identity of Class Members.

15.   The Settlement Fund shall be applied as follows: (a) to pay any Notice and Administration Expenses; (b) to pay any Taxes and Tax Expenses; (c) to pay any Fee and Expense

Award; and (d) to distribute the Net Settlement Fund to Authorized Claimants as allowed by the Settlement Agreement, the Plan of Allocation, or the Court.

16.     All payments of Notice and Administration Expenses, Taxes, Tax Expenses, any other fees or costs of the Claims Administrator, any other cost of administering the Settlement Fund, and any portion of the Fee and Expense Award shall be paid by the Settlement Fund and not by Lead Plaintiff, Plaintiffs' Counsel, members of the Class, the Defendants, or Defendants' Counsel.  Except as expressly stated in this Settlement Agreement, there shall be no liability on the part of Lead Plaintiff, Plaintiffs' Counsel, members of the Class, the Defendants, or Defendants' Counsel for Notice and Administration Expenses, Taxes, Tax Expenses, any other fees or costs of the Claims Administrator, any other cost of administering the Settlement Fund, or any portion of the Fee and Expense Award.

17.     Following the Final Settlement Date, in accordance with the terms of this Settlement Agreement, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants, subject to and in accordance with the following:

a)     Each Class Member who wishes to participate in the Net Settlement Fund must return a signed Proof of Claim by first class mail, postmarked no later than a date to be set by the Court and set forth in the Notice.  A sample Proof of Claim proposed by the Parties is annexed hereto as Exhibit 2 to Exhibit A.  The address to which the Proof of Claim must be mailed shall be set forth on the Proof of Claim itself and shall also be printed in the Notice.  If a Class Member chooses to return his, her, or its Proof of Claim in a manner other than by first-class mail, then it must be actually received at the address on the Proof of Claim by the date set forth in the Notice, unless that date is extended by order of the Court.

b)     The Proof of Claim must be sworn on oath or made subject to the penalties of perjury pursuant to 28 U.S.C. § 1746.

c)     The validity of each claim submitted will be initially determined by the Claims Administrator, acting under Plaintiffs' Lead Counsel's supervision as necessary, in accordance with the Plan of Allocation approved by the Court.  Plaintiffs' Lead Counsel, the Claims Administrator, Defendants and Defendants' Counsel shall not have any liability arising out of said determination.  In the event a Class Member disagrees with such determination, the dispute shall be submitted to the Court for summary resolution.  Each Class Member shall be deemed to have submitted to the jurisdiction of the Court with respect to that Class Member's claim to the Net Settlement Fund.

d)     All initial determinations as to the validity of a Proof of Claim, the calculation of the extent to which each Authorized Claimant will participate in the Net Settlement Fund, the preparation and mailing of distributions to Authorized Claimants, and the distribution of the Net Settlement Fund shall be performed by the Claims Administrator subject, as circumstances may require, to supervision by Plaintiffs' Lead Counsel or such other persons or entities as Plaintiffs' Lead Counsel may, in their sole discretion, deem necessary or advisable to assist them in the administration of this Settlement Agreement.  All proceedings with respect to the administration of the Settlement Fund and Net Settlement Fund, and administration, processing and determination of claims described in this Settlement Agreement, and the determination of all controversies related thereto, including disputed questions of law and fact with respect to the validity of any Proof of Claim or regarding rejection of claims, shall remain under the jurisdiction of the Court and shall be governed by, and construed in accordance with, the laws of the Commonwealth of Massachusetts without regard to conflicts-of-laws principles.

e)     Except as otherwise ordered by the Court, any Class Member who fails to return a timely and signed Proof of Claim consistent with the procedures set forth in this Section shall be barred from receiving a distribution from the Net Settlement Fund, but shall nevertheless be

bound by and subject to this Settlement Agreement, the Final Judgment, and all proceedings, rulings, orders, and judgments in this Action, including, without limitation, the release of the Settled Claims and the dismissal with prejudice of this Action.  Notwithstanding the foregoing, Plaintiffs' Lead Counsel may, in its sole discretion, accept for processing late claims so long as the distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed.

f)        The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Notice mailed to Class Members and approved by the Court.  The Defendants shall have neither the right nor the duty to participate in the manner in which the Net Settlement Fund is distributed to the Class. The Plan of Allocation shall not be a part of the Settlement Agreement and any order or proceeding related to said Plan of Allocation shall not operate to terminate or cancel this Settlement Agreement or affect the finality of the Court's Final Judgment approving this Settlement Agreement and the Settlement it describes, or any other orders entered pursuant to this Settlement Agreement.

g)        Plaintiffs' Lead Counsel will apply to the Court, on notice to Defendants' Lead Counsel, for a Distribution Order approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Proofs of Claim submitted by Authorized Claimants and approving any Notice and Administration Expenses (including but not limited to the fees and expenses of the Claims Administrator) or Taxes and Tax Expenses not previously applied for and, if the Final Settlement Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants in accordance with the Plan of Allocation and the Claims Administrator's determinations.

h)        This is not a claims-made settlement.  As of the Final Settlement Date, the Defendants shall not have any right to the return of the Settlement Fund or any portion thereof

irrespective of the number of Proofs of Claim that are filed, the collective amount of losses of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.  If there is any balance remaining in the Net Settlement Fund after six (6) months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), Plaintiffs' Lead Counsel shall (provided that Plaintiffs' Lead Counsel, in its sole discretion, determines it cost-effective to do so), reallocate such balance among Authorized Claimants in an equitable and economic fashion.  Thereafter, any balance which still remains in the Net Settlement Fund shall be donated, without further notice to Defendants or the Class, or approval of the Court, to one or more appropriate non-sectarian, not-for-profit, 501(c)(3) organizations chosen by Plaintiffs' Lead Counsel.  Any orders or proceedings relating to the Plan of Allocation shall not operate to terminate or cancel this Settlement Agreement, and shall have no effect on the Final Judgment becoming final.

18.     No Person shall have any claim against Plaintiffs' Lead Counsel or the Claims Administrator based on distributions, determinations, or claim rejections made substantially in accordance with the Settlement Agreement contained herein, the Plan of Allocation, or further orders of the Court.  No Person shall have any claim against Defendants or Defendants' Counsel, based on any distributions, determinations, or claim rejections.


## VI.     RELEASES

19.     Upon the Final Settlement Date, Lead Plaintiff and every Class Member, and any of their heirs, executors, administrators, successors or assigns, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Settled Claims (including Unknown Claims) against the Released Parties.

20.     Upon the Final Settlement Date, each of the Released Parties shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged each and all of the Class Members, the Lead Plaintiff, and Plaintiffs' Counsel from all Settled Defendants' Claims (including Unknown Claims) arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of the Action or the Settled Claims.

21.     Unless otherwise provided for herein, or unless the Court orders otherwise, only those Class Members filing valid and timely Proofs of Claim shall be entitled to receive a distribution from the Settlement Fund.  All Class Members shall be bound by the releases set forth in this section whether or not they submit a valid and timely Proof of Claim.

22.     The Parties stipulate and agree that, upon the Final Settlement Date, Lead Plaintiff shall knowingly, voluntarily, intentionally and expressly waive and relinquish, and each of the other Class Members shall be deemed to have, and by operation of the Final Judgment shall have, knowingly, voluntarily, intentionally and expressly waived and relinquished any and all Settled Claims (including Unknown Claims) against the Released Parties, as well as the provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

The Parties acknowledge that the foregoing waiver was bargained for and a key element of the Settlement and this Settlement Agreement.

## VII.    FEE AND EXPENSE AWARD

23.     Plaintiffs' Lead Counsel may submit an application for a Fee and Expense Award to be distributed from the Settlement Fund.  Plaintiffs' Lead Counsel may make additional applications for

reimbursement of expenses (including Notice and Administration Expenses) incurred subsequent to the initial application for a Fee and Expense Award.

24.    Any Fee and Expense Award shall become payable from the Settlement Fund immediately after entry by the Court of the Fee and Expense Award.  Plaintiffs' Lead Counsel shall thereafter allocate the Fee and Expense Award payable to Plaintiffs' Lead Counsel among Plaintiffs' Counsel in a manner that, in Plaintiffs' Lead Counsel's good-faith judgment, reflects such counsel's contribution to the institution, prosecution, or resolution of the Action.  If the Final Judgment is reversed or modified on appeal, if the Final Settlement Date does not occur, or if the Settlement Agreement is terminated pursuant to Section 29 of this Settlement Agreement, then any Fee and Expense Award is no longer payable.  In the event that any portion of the Fee and Expense Award had been paid from the Settlement Fund, Plaintiffs' Lead Counsel and Lead Plaintiff shall, within five (5) business days from the reversal or modification of the Final Judgment, the event which precludes the Final Settlement Date from occurring, or the termination of the Settlement Agreement pursuant to Section 29, refund to the Settlement Fund the Fee and Expense Award paid to Plaintiffs' Lead Counsel and Lead Plaintiffs, respectively, and in addition shall pay into the Settlement Fund interest on the amount refunded at the average rate earned on the Settlement Fund from the time of payment until the date of refund.

25.    Defendants and the Released Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment to Plaintiffs' Lead Counsel or any other Person who receives payment from the Settlement Fund.

26.    The procedures for and the allowance or disallowance by the Court of an application for a Fee and Expense Award to be paid out of the Settlement Fund are not part of the Settlement set forth in this Settlement Agreement and are to be considered by the Court at the Fairness Hearing, but separately from the Court's consideration of the fairness, reasonableness, and adequacy of the

Settlement set forth in this Settlement Agreement.  None of the Parties may terminate or cancel the Settlement Agreement on the basis of the amount of any Fee and Expense Award.  Any order or proceedings related to any application for a Fee and Expense Award by Plaintiffs' Lead Counsel or any appeal from any order relating to such a Fee and Expense Award or any reversal or modification thereof shall not modify, terminate or cancel this Settlement Agreement or affect or delay the finality of the Final Judgment approving the Settlement Agreement and the Settlement of the Action.

## VIII.   FINAL JUDGMENT AND ORDER
OF DISMISSAL WITH PREJUDICE

27.     Upon the Court's approval of this Settlement Agreement, the Parties shall request that the Court enter a Final Judgment substantially similar in all material respects to that annexed hereto as Exhibit B.

## IX.   CONDITIONS OF SETTLEMENT, EFFECT OF
DISAPPROVAL, CANCELLATION OR TERMINATION

28.     The terms and provisions of this Settlement Agreement may only be amended, modified, or expanded by written agreement of the Parties and approval of the Court; *provided, however,* that after entry of the Final Judgment, the Parties may by written agreement effect such amendments, modifications or expansions of this Settlement Agreement and its implementing documents (including all exhibits to the Settlement Agreement) without notice to or approval by the Court only if such changes are not materially inconsistent with the Court's Final Judgment and do not (i) materially limit the rights of Class Members under the Settlement Agreement; or (ii) materially limit the rights of the Released Parties under the Settlement Agreement.

29.     This Settlement Agreement will terminate at the sole option and discretion of Lead Plaintiff or Defendants if (i) the Court or any appellate court rejects, modifies, or denies approval of any portion of this Settlement Agreement or the proposed Settlement that the terminating Party reasonably and in good faith determines is material, including, without limitation, the terms of relief, the findings of

the Court, the provisions relating to Notice, and/or the terms of the Releases; or (ii) the Court or any appellate court does not enter or completely affirm, or modifies or expands, any portion of the Preliminary Approval Order or Final Judgment that the terminating Party reasonably and in good faith believes is material; *provided, however,* that the option to terminate under this Section is subject to, and limited by, Section 31.  The terminating Party must exercise the option to withdraw from and terminate this Settlement Agreement as provided in this Section by providing written notice of said termination to all other Parties hereto no later than twenty (20) days after receiving actual notice of the event prompting the termination.  Plaintiffs' Lead Counsel shall also have the right to terminate this Settlement if Defendants do not timely make the payments provided for in Sections 3 and 4 of this Settlement Agreement, subject to Defendants' right to cure any such failure to pay within five (5) days of receiving a written notice of deficiency from Plaintiffs' Lead Counsel.

30.    Upon the Final Settlement Date, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.

31.    Neither a modification nor a reversal by the Court or any appellate court of any Plan of Allocation or of any Fee and Expense Award shall constitute grounds for cancellation or termination of this Settlement Agreement.

32.    If an option to withdraw from and terminate this Settlement Agreement arises under Section 29 of this Settlement Agreement, (i) neither Defendants nor Lead Plaintiff will be required for any reason or under any circumstance to exercise that option, and (ii) any exercise of that option shall be made in good faith, but in the sole and unfettered discretion of the Defendants or Lead Plaintiff, respectively.

33.    If the Final Settlement Date does not occur, or if the Settlement Agreement is terminated pursuant to Section 29 of this Settlement Agreement, then:

a) this Settlement Agreement shall be null and void and shall have no force or effect, and no Party to this Settlement Agreement shall be bound by any of its terms, except for the terms of this Section and Sections 24 and 39;

b) this Settlement Agreement, all of its provisions, and all negotiations, statements, documents and proceedings relating to it shall be without prejudice to the rights of Defendants, Lead Plaintiff, or any other Class Member, all of whom shall be restored to their respective positions vis-à-vis each other as they existed immediately before the execution of this Settlement Agreement;

c) the Released Parties expressly and affirmatively reserve all defenses, arguments, and motions as to all claims that have been or might later be asserted in the Action;

d) Lead Plaintiff and its current and former predecessors, successors, heirs, agents, attorneys, representatives, and assigns, individually and on behalf of the Class, expressly and affirmatively reserves all motions as to, and arguments in support of, all claims that have been or might later be asserted in the Action;

e) the Parties shall meet and confer and jointly request a telephonic or in-person conference before the Court to discuss matters relating to a prompt resumption of the litigation;

f) neither this Settlement Agreement, nor the fact of its having been made, nor any documents prepared and statements made in connection therewith shall be referred to, admissible in or introduced or entered into evidence in any other way for any purpose whatsoever in this Action or in any other action or proceeding;

g) Plaintiffs' Lead Counsel shall immediately, and in any event within ten (10) business days, return directly to the respective parties and/or insurers that caused the Settlement Amount to be deposited, in accordance with their instructions, the Settlement Amount (plus any

interest accrued thereon) less any Notice and Administration Expenses or Tax and Tax Expenses paid out of, or incurred by, the Settlement Fund; and

h)      any order or judgment entered after the date of this Settlement Agreement that relates to this Settlement Agreement shall be deemed vacated and will be without any force or effect.

34.      Simultaneously herewith, Plaintiffs' Lead Counsel and Defendants' Counsel are executing a "Supplemental Agreement" setting forth certain conditions under which this Settlement Agreement may be withdrawn or terminated by Defendants if potential Class Members who, in the aggregate, purchased or acquired a certain number of shares of AMT common stock during the Class Period exclude themselves from the Class.  The Supplemental Agreement shall not be filed prior to the Fairness Hearing.  In the event of a withdrawal from this Settlement Agreement pursuant to the Supplemental Agreement, this Settlement Agreement shall become null and void and of no further force and effect and the provisions of Section 33 shall apply.  Notwithstanding the foregoing, the Settlement Agreement shall not become null and void as a result of the election by Defendants to exercise their option to withdraw from the Settlement Agreement pursuant to the Supplemental Agreement until the conditions set forth in the Supplemental Agreement have been satisfied.

## X.      GENERAL MATTERS

35.      The Parties (i) acknowledge that it is their intent to consummate this Settlement; and (ii) agree to cooperate to the full extent necessary to effectuate and implement all terms and conditions of this Settlement Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of this Settlement Agreement.

36.      The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes that have been asserted or that could have been asserted by Lead Plaintiff and the Class Members against the Released Parties with respect to the Settled Claims or the Action.  The Settlement

compromises claims which are contested and shall not be deemed an admission by any Party as to the merits of any claim or defense. The Parties agree that the amount paid to the Settlement Fund and the other terms of the Settlement were negotiated in good faith and at arm's length by the Parties, and reflect a settlement that was reached voluntarily after consultation with competent and experienced legal counsel. The Parties and their counsel agree not to contend in any forum that the Action was brought or defended in bad faith, without a reasonable basis, or in violation of Rule 11 of the Federal Rules of Civil Procedure, and reserve their right to rebut, in a manner that such Party determines to be appropriate, any contention made in any forum that the Action was brought or defended in bad faith, without a reasonable basis, or in violation of Rule 11 of the Federal Rules of Civil Procedure.

37.     The Parties and their respective counsel agree that they will refrain from disparaging each other in any public statements in connection with the Action. The Parties and their respective counsel also agree to keep the information disclosed to them during the acts contemplated by the Settlement and this Settlement Agreement confidential unless required to publicly disclose such information by applicable law and to provide advance notice as to the content of any public communication regarding the Settlement, its terms, conditions, or obligations.

38.     If a case is commenced under Title 11 of the United States Code (Bankruptcy) in respect of any entity contributing funds to the Settlement Amount on behalf of any Defendant, or a trustee, receiver or conservator is appointed as to any such person or entity under any similar law, and in the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by such Defendant (or insurer) to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be, and is capable of being, returned or disgorged by the Settlement Fund and is so returned or disgorged, and replacement funds are not promptly deposited into the Settlement Fund by Defendants, then, at the election of Plaintiffs' Lead Counsel, the Parties shall jointly move the Court to vacate and set aside the

releases given and Final Judgment entered in favor of the Defendants pursuant to this Settlement Agreement, which releases and Final Judgment shall be null and void, and the Parties shall be restored to their respective positions in the Action as of the day immediately prior to the execution of this Settlement Agreement and any amounts in the Settlement Fund shall be returned as provided in Section 33.

39.     Neither this Settlement Agreement, whether or not it is consummated and whether or not it is terminated, nor any of its provisions, nor any negotiations, proceedings or agreements relating to the Settlement Agreement and the Settlement, nor any matter arising in connection with such negotiations, proceedings or agreements, nor any act performed or document executed pursuant to or in furtherance of this Settlement Agreement: (i) is or may in any event be deemed or construed to be or may be offered or received in evidence or used as or deemed to be an admission or evidence of a presumption, concession or admission by any Defendant of the truth of any fact alleged in the Complaint or the validity of any Settled Claim or of any wrongdoing, liability, negligence or fault by any Defendant, or a presumption, concession or admission by Lead Plaintiff as to the infirmity of any fact alleged in the Complaint, viability of any Settled Claim, or lack of wrongdoing, liability, negligence or fault by any Defendant; (ii) is or may be deemed to be or may be referred to or used as an admission or evidence of a presumption, concession or admission with respect to any fault or omission, or lack thereof, of the Defendants, or for any other reason, in any civil, criminal, arbitration or administrative action or proceeding in any court, arbitration, administrative agency or other tribunal, other than in such proceedings as may be necessary to consummate, effectuate or enforce any of the provisions of the Settlement Agreement, the Settlement or the Final Judgment; (iii) is or may be used as an admission or evidence that Lead Plaintiff's claims in the Action did not have merit; (iv) is or may be used or construed against any Party as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have been recovered by Lead Plaintiff after trial; (v) is or may be

used or construed or received in evidence as an admission, concession or presumption by Defendants that any damages were recoverable under the Complaint or by Lead Plaintiff that the damages recoverable under the Complaint would not have exceeded the Settlement Fund. Any Party may file this Settlement Agreement and/or the Final Judgment in any action that may be brought to enforce the terms of this Settlement Agreement and/or the Final Judgment.

40.     All of the Exhibits to the Settlement Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

41.     The Settlement Agreement may not be amended or modified, nor may any of its provisions be waived, except by a written instrument signed by or on behalf of all Parties or their successors-in-interest. The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Settlement Agreement.

42.     The Settlement Agreement and the Exhibits annexed hereto constitute the sole and entire agreement among the Parties, and no representations, warranties, inducements, promises or agreements, oral or otherwise, have been made by or to any Party concerning this Settlement Agreement or its Exhibits other than the representations, warranties, and covenants contained and memorialized in such documents. Any and all prior discussions, negotiations, agreements, commitments, and understandings related thereto are superseded hereby and merged herein. Except as otherwise provided herein, each Party shall bear his, her, or its own fees and costs.

43.     Plaintiffs' Lead Counsel, on behalf of the Class, is expressly authorized by the Lead Plaintiff to take all appropriate action required or permitted to be taken by the Class pursuant to the Settlement Agreement to effectuate its terms and also are expressly authorized to enter into any modifications or amendments to this Settlement Agreement on behalf of the Class which it deems appropriate.

44.     Each counsel or other Person executing the Settlement Agreement or any of its Exhibits, or any related settlement documents, on behalf of any Party hereby warrants and represents that such Person has the full authority to do so and that such Person has the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms.

45.     This Settlement Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

46.     The Settlement Agreement shall be binding upon, and inure to the benefit of, the heirs, executors, administrators, trustees, successors and assigns of the Parties, including any corporation, partnership or other entity into which any Party hereto may merge or consolidate.

47.     The construction, interpretation, operation, effect and validity of this Settlement Agreement and any ancillary documents necessary to effectuate it, shall be governed by and interpreted according to the law of the Commonwealth of Massachusetts, excluding its conflict-of-law provisions, except to the extent that federal law requires that federal law governs.  Any dispute relating to this Settlement Agreement shall be brought exclusively in the United States District Court for the District of Massachusetts, and each of the Parties agrees not to contest subject matter jurisdiction or personal jurisdiction for any such dispute brought in this Court.  This is a mandatory forum selection clause.

48.     The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Settlement Agreement, and the administration and consummation of the Settlement embodied therein.  All Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Settlement Agreement.

49.     The Parties reserve the right, upon the agreement of all of them and subject to the Court's approval, to make any reasonable extensions of time or modifications to the Exhibits that might be necessary to carry out any of the provisions of this Settlement Agreement.

50.     All Parties agree that this Settlement Agreement was drafted by counsel for the Parties in good faith and at arm's length, and that no parol or other evidence may be offered to explain, construe, contradict or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which the Settlement Agreement was made or executed.  This Settlement Agreement shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared or drafted by counsel for that Party.  It is recognized that this Settlement Agreement was the result of arm's length negotiations between counsel for the Parties and that counsel for all Parties contributed substantially and materially to the preparation of this Settlement Agreement.

51.     This Settlement Agreement shall be effective on its Execution Date, but the Settlement shall become effective only on the Final Settlement Date.

52.     The captions contained in this Settlement Agreement are inserted only as a matter of convenience and in no way define, limit, extend or describe the scope of this Settlement Agreement or the intent of any provision hereof.

53.     In the event any one or more of the material provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, this Settlement Agreement shall not be binding on a Party without the consent of such Party to the change resulting from such finding or holding.

54.     By making their application for approval of this Settlement, Plaintiffs' Lead Counsel and Defendants' Counsel shall not be deemed to have waived any attorney-client or work-product privilege or immunity, and all information and documents transmitted between Plaintiffs' Lead Counsel and Defendants' Counsel in connection with this Settlement shall be inadmissible in accordance with Rule 408 of the Federal Rules of Evidence.

55.     Unless otherwise indicated, any notice or other communication that may or must be given by any Party or its counsel, or by the Claims Administrator, under this Settlement Agreement shall

be in writing and shall be delivered by fax and by prepaid overnight mail to counsel for the Party or

Parties to which such notice or communication is directed at the fax number and address for such

counsel set forth below.

Dated: February 8, 2008                          LABATON SUCHAROW LLP

                                     By:     /s/ David J. Goldsmith
                                                 Joel H. Bernstein *(pro hac vice)*
David J. Goldsmith *(pro hac vice)*
Stephen W. Tountas *(pro hac vice)*
140 Broadway
New York, New York  10005
(212) 907-0700
(212) 818-0477 (fax)
jbernstein@labaton.com
dgoldsmith@labaton.com
stountas@labaton.com

*Lead Counsel for Lead Plaintiff*
*Steamship Trade Association-International*
*Longshoremen's Association Pension Fund*
*and the Class*

Garrett J. Bradley (BBO #629240)
Andrea Marino (BBO #663932)
THORNTON & NAUMES LLP
100 Summer Street, 30th Floor
Boston, Massachusetts  02110
(617) 720-1333
gbradley@tenlaw.com
amarino@tenlaw.com

*Local Counsel for Lead Plaintiff*

Glenn E. Mintzer
LAW OFFICES OF PETER G. ANGELOS
One Charles Center
100 North Charles Street, 22nd Floor
Baltimore, Maryland  21201
(410) 649-2000
gmintzer@lawpga.com

*Attorneys for Lead Plaintiff*

Dated:  February 8, 2008

EDWARDS ANGELL PALMER
   & DODGE LLP

By:     /s/ Michael T. Gass
         Michael T. Gass (BBO #546874)
         Matthew A. Martel (BBO #641064)
         111 Huntington Avenue
         Boston, Massachusetts  02199-7613
         (617) 239-0100
         (617) 227-4420 (fax)
         mgass@eapdlaw.com
         mmartel@eapdlaw.com

KING & SPALDING LLP

By:     /s/ Michael R. Smith
         Michael R. Smith *(pro hac vice)*
         B. Warren Pope *(pro hac vice)*
         Benjamin Lee *(pro hac vice)*
         1180 Peachtree Street, N.E.
         Atlanta, Georgia  30309-3521
         (404) 572-4600
         (404) 572-5100 (fax)
         mrsmith@kslaw.com
         wpope@kslaw.com
         blee@kslaw.com

*Lead Counsel for Defendants American Tower Corporation, Steven B. Dodge, James D. Taiclet, Jr., Bradley E. Singer, Jean A. Bua, Timothy F. Allen, Justin D. Benincasa, Pamela D.A. Reeve, Carolyn F. Katz, and Mary Agnes Wilderotter*